UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| ATAIN SPECIALTY INSURANCE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 12-21-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| DWYER CONCRETE LIFTING OF | ) | **ORDER** |
| LEXINGTON, INC., | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Madisonian Compromise has been the foundation of our system of judicial federalism for more than two hundred years.  *See* Richard H. Fallon, Jr. et al., Hart and Wechsler's The Federal Courts and the Federal System 7–9, 275 (6th ed. 2009).  The foundation of the Stumbos' home has not proved quite as durable.  The Stumbos claim that the installation of the steel pier system meant to stabilize their home's foundation exacerbated the problem.  Thus, they filed a lawsuit in Kentucky state court.  R. 1 at 2–3.

A party brought into that litigation, Atain Specialty Insurance, now asks the Court to exercise its jurisdiction and enter a declaratory judgment over the same claims that are pending in state court.  *Id.*  Atain's complaint thus invites the Court to contravene the Madisonian Compromise's implicit assumption—that state courts, not federal district courts, are the bedrock forum for citizens to exercise their legal claims.  *Cf. Printz v. United States*, 521 U.S. 898, 907 (1997).

Sixth Circuit doctrine reflects this general principle of federalism through the particular prism of the Declaratory Judgment Act.  While the Act gives a federal court the

unique ability to assert jurisdiction at its discretion, courts must be cautious when doing so overlaps with parallel state-court litigation. In this case, Atain asks the Court to retain jurisdiction over its declaratory judgment action while identical claims are pending in state court. Because the balance of considerations counsels against a federal district court retaining jurisdiction over an action involving purely state law claims, the Court declines to do so.

## BACKGROUND

When Mary and Greg Stumbo discovered cracks in their home's foundation in 2003, they knew that their house was settling. R. 14 at 2. So they hired Dwyer Concrete Lifting of Lexington, Inc. to install a steel pier system designed to buttress their foundation and thus stop the settlement. R. 17 at 3. Dwyer insured the installation project with Atain Specialty Insurance. *Id.* But even after Dwyer completed the installation, the Stumbos' home continued to settle, and more cracks appeared in the foundation. R. 14-3 at 2–3.

Believing several parties were responsible for the damage, the Stumbos brought multiple law suits in Floyd Circuit Court. *See* R. 14-2; R. 14-3. The Stumbos first filed suit against a blasting company, Bizzack, Inc., alleging that its blasting operations on a nearby road project had damaged their home. R. 14 at 2; R. 14-2 at 2. The Stumbos then filed a second suit against Dwyer and Alchemy Engineering, Inc. alleging negligent workmanship in the planning and installation of the pier system. R. 14 at 2; R. 14-3; R. 17 at 3. The state court consolidated the two actions and the parties engaged in discovery. R. 14 at 2. During the litigation, Dwyer submitted a claim to Atain, but Atain declined coverage based on its reading of Dwyer's policy. R. 17 at 3.

2

Consolidating the two actions did not simplify the case. After discovery, the state court stayed the proceedings so the parties could engage in settlement discussion. But it lifted the stay when negotiations stalled. *See* R. 14 at 2. With the stay lifted, the Stumbos amended their complaint to include Atain. *Id.* at 2–3. Their amendment brought two general claims against Atain. First, it sought a declaration that Atain was obliged to indemnify Dwyer. *See* R. 14-4 at 6 (arguing that the Stumbos were an interested party as to the insurance contract between Dwyer and Atain and thus entitled to a declaration under Ky. Rev. Stat. § 418.045). Second, it alleged several bad-faith claims against Atain. *See id.* at 6–8.

Soon after, Dwyer filed for leave from the state court to assert its own coverage-based cross claims against Atain. R. 14 at 3. The state court scheduled a hearing on Dwyer's motion for leave. But the day before the hearing, Atain filed this case under the Declaratory Judgment Act, seeking a judgment that Dwyer was not entitled to coverage. *See* R. 1. Atain then appeared at the state court hearing on Dwyer's motion for leave and argued that the state court should not grant Dwyer leave because of Atain's newly filed federal declaratory action. The state court rejected that argument and permitted Dwyer to assert coverage claims against Atain. R. 14 at 3. Not to be forgotten, the actual plaintiffs in the case, the Stumbos, moved for summary judgment in state court on their claims against Atain. That summary judgment motion is now ripe and will determine whether Dwyer is entitled to coverage from Atain. *Id.*

Back in federal court, Dwyer has now asked the Court to withhold its discretionary jurisdiction over Atain's declaratory judgment action by dismissing, or alternatively, abstaining from hearing, this case. R. 14.

3

# DISCUSSION

## I.      The Declaratory Judgment Act

Since the 1940s, comedians have advised their audiences against "making a federal case out of it."  James E. Clapp et al., Lawtalk: The Unknown Stories Behind Familiar Legal Expressions 161 (2011) (reporting that Jimmy Durante is "the first person known to have uttered the phrase, in a comedy sketch broadcast in January 1944").  When it comes to the Declaratory Judgment Act, the Sixth Circuit and the Supreme Court have concurred—though on decidedly less humorous grounds.  Atain has not heeded either's well-worn advice.

Under the Declaratory Judgment Act, federal courts "*may*" enter declaratory judgments in "case[s] of actual controversy."  28 U.S.C. § 2201(a) (emphasis added).  Accordingly, federal jurisdiction under the statute is not the same as diversity or federal-question jurisdiction because the statute "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  The most important consideration in exercising this discretion is whether retaining jurisdiction interferes with state-court litigation.  In fact, the Supreme Court has advised federal courts to avoid "[g]ratuitous interference with the orderly and comprehensive disposition of . . . state court litigation."  *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942).  Taking this advice to heart, the Sixth Circuit has "held on a number of occasions that a district court should stay or dismiss complaints filed by insurance companies seeking a declaratory judgment as to their underlying state court lawsuits."  *Travelers Indem. Co. v. Bowling Green Prof'l Assocs.*, 495 F.3d 266, 273 (6th Cir. 2007).

Atain thus starts at a disadvantage because it asks the Court to decide the same legal questions that are pending in Kentucky state court. Its complaint seeks judgment on the heart of the state court litigation: whether Dwyer's insurance policy with Atain provides coverage for the Stumbos' claims. Although this fact does not *require* the Court to dismiss this declaratory action, district courts rarely entertain an insurance company's declaratory judgment action to resolve coverage issues that are squarely presented in an ongoing state-court case. *See Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc) ("If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court."). Indeed, the Sixth Circuit has repeatedly instructed district courts that the best course is to respect the state court's ability to handle the matter. *See Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986) ("[D]eclaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court."); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 816–17 (6th Cir. 2004) (questioning "the need for . . . declaratory judgments in federal courts when the only question is one of state law and when there is no suggestion that the state court is not in a position to define its own law in a fair and impartial manner" (quoting *Am. Home Assurance Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986))).

## II.     The Sixth Circuit's Five-Factor Test

The Sixth Circuit has outlined a five-factor test for deciding whether to exercise jurisdiction over declaratory judgment actions. The Court must determine whether: (1) the

declaratory action would settle the controversy; (2) a declaratory judgment would increase friction between federal and state courts; (3) an alternative, better remedy is available; (4) a declaratory judgment would serve a "useful purpose in clarifying the legal relations in issue"; and (5) the declaratory remedy is being sought merely to "provide an arena for a race for res judicata." *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). Applying the factors in this case supports deference to the state court action.

**Factor One:** Resolving this declaratory judgment action will not settle the controversy. *Travelers Indem. Co.*, 495 F.3d at 271–72. The focus of this factor is not whether issuing a declaratory judgment would settle the controversy immediately before the Court, but whether doing so would settle the "ultimate controversy" in the underlying state court litigation. *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 788 (E.D. Ky. 2008); *see Travelers Indem. Co.*, 495 F.3d at 272. Atain's requested declaratory judgment would not do so.

First, Atain's complaint leaves out some of the parties from the state court case. *See Bituminous Cas. Corp.*, 373 F.3d at 814. Here, Atain and Dwyer are the only parties to the declaratory judgment. *See* R. 14. So—like the absent party in *Bituminous Cas. Corp.*—the Stumbos are not a party to the declaratory judgment action and can still pursue third-party recovery claims in state court. 373 F.3d at 814. In fact, the Stumbos have already filed such claims against Atain and a motion for summary judgment on them is currently pending in state court. R. 14 at 3. Thus, even if this Court were to grant declaratory judgment in Atain's favor, such judgment would not resolve the entire litigation.

6

Second, Atain's declaratory judgment action may not even settle the state-court controversy between Dwyer and Atain. Dwyer also alleges that Atain acted in bad faith when it refused coverage. *See* R. 14 at 3. Although a declaratory judgment in favor of Atain would likely resolve the bad faith claim—if Atain had no obligation to pay, then it had no obligation to settle—arguing that this favors jurisdiction only looks at one side of the coin. A ruling against Atain would compel the parties to return to state court to resolve the remaining bad-faith and unfair-settlement claims. A declaratory judgment action that would settle the underlying state-court litigation only if the Court rules a certain way still poses an undue risk of forcing the parties to engage in fractured, piecemeal litigation and thus weighs against exercising jurisdiction.

**Factor Two:** A declaratory judgment in this case could increase friction between federal and state courts. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 560 (6th Cir. 2008). There is a lawsuit currently pending in the Floyd Circuit Court that presents the exact same questions Atain asks the Court to decide here. Of course, the "mere existence of a state court proceeding is not determinative of improper federal encroachment upon state court jurisdiction." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987). Rather, the Sixth Circuit has identified three "sub-factors" to guide district courts in determining whether the potential for friction is too great. Here, those three sub-factors support dismissal.

The first sub-factor is "whether the underlying factual issues are important to an informed resolution of the case." *Scottsdale Ins. Co.*, 513 F.3d at 560. The Sixth Circuit's primary concern under this sub-factor is whether the "issue raised in federal court will require making factual findings that might conflict with similar findings made by the state

court." *Id.* Conflicting factual findings is not a concern in this case because the construction of Dwyer's insurance policy is a question of law. *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 322 (Ky. 2010) ("As a general rule, the construction and legal effect of an insurance contract is a matter of law for the court."). This sub-factor therefore does not indicate that there will be friction with the state court.

The remaining sub-factors, however, do suggest friction. The second sub-factor is whether the state court is in a better position to evaluate the issues than the federal court. *Scottsdale Ins. Co.*, 513 F.3d at 560. This case involves pure questions of state law "with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Bituminous Cas. Corp.*, 373 F.3d at 815; *see Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 818 (1989) (recognizing that "question[s] of state law [are] within the special expertise of the [state] courts"). While the state-law questions are not particularly novel, novelty is not the only concern. For example, in *Bitumious Casualty Corp.* the Sixth Circuit held that the Kentucky court was in a better position to resolve questions of Kentucky law without immediately pointing to the novelty of the state-law issues. 373 F.3d at 815. The court proceeded to say that the state-law issues were novel, but only as an additional reason that the state court was in a better position to resolve the matter. *Id.*

Finally, the third sub-factor—"whether there is a close nexus between underlying factual and legal issues and state law and/or public policy," *Scottsdale Ins. Co.*, 513 F.3d at 560—also suggests the potential for friction with the state court. This is a case about an insurance contract, which the state "regulate[s] . . . for the protection of [its] residents." *Id.* at 561 (quoting *Bituminous Cas. Corp.*, 373 F.3d at 815). Interpreting the contract will

8

necessarily implicate state insurance-law policies, a recognized source of friction. *See, e.g., Travelers Indem. Co.*, 495 F.3d at 273.

Weighed together, the three sub-factors indicate that entertaining Atain's declaratory judgment suit could increase friction with the state courts and encroach on state authority. Although there is no risk of conflicting factual findings, the issue this case turns on—the interpretation of an insurance contract—is a pure question of state law that is intimately intertwined with the state's regulation of the insurance industry.

**Factor Three:** Atain also has an alternative, better remedy in state court. *Scottsdale Ins. Co.*, 513 F.3d at 561–62. Atain can simply argue in state court that its insurance policy did not cover the lawsuit. Or, if Atain so chooses, it may be able to institute a separate declaratory judgment action in Kentucky state court under Ky. Rev. Stat. § 418.040. *See Scottsdale Ins. Co.*, 513 F.3d at 562. What's more, Kentucky courts are the experts on Kentucky law and thus provide a better forum for this state-law contract dispute. *See Travelers Indem. Co.*, 495 F.3d at 272. Additionally, filing the declaratory judgment action in state court would avoid the "confusing problems of scheduling, orderly presentation of fact issues and res judicata" that inevitably arise when separate courts hear the same case. *Grange Mut. Cas. Co.*, 565 F. Supp. 2d at 791 (quoting *Bituminous Cas. Corp.*, 373 F.3d at 812).

**Factor Four:** Deciding this case would not serve a truly "useful purpose" by clarifying legal relationships among the parties. *AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004); *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas. Co.*, 177 F.2d 942, 944 (6th Cir. 1949). Resolving the declaratory judgment action may clarify the legal relations

9

between Dwyer and Atain and terminate the immediate dispute between them. But that clarification must serve a "useful purpose." *See AmSouth Bank*, 386 F.3d at 786. Here, it would not be useful. The state court can also clarify these very same issues—and probably do so more ably given its state-law expertise. *See id*. The Court knows of no reason why the "declaratory plaintiff will suffer injury unless legal relations are clarified" here rather than in state court. *Id.*

Ultimately, keeping this case would do little but "cause [both Dwyer and Atain] to engage in litigation on two fronts." *Grange Mut. Cas. Co.*, 565 F. Supp. 2d at 785 (citing *Panhandle E. Pipe Line Co.*, 177 F.2d at 944). As the Sixth Circuit recognized in *Bituminous Cas. Corp.*, 373 F.3d at 813–14, when a federal court decides a declaratory judgment action presenting the exact same issues as those presented in a state court proceeding, there is simply no good result. "The federal court could either reach the same conclusion as the state court, in which case the declaration would have been unnecessary . . . or the federal court could disagree with the state court, resulting in inconsistent judgments." *Id.* Either way, "[t]he declaratory judgment action in federal court [] serve[s] no useful purpose." *Id.* This factor supports dismissal.

**Factor Five:** The last factor is whether Atain is seeking the declaratory judgment merely for the purpose of providing "an arena for a race for res judicata." *Grand Trunk*, 746 F.2d at 326. This factor is "meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before . . . [the] natural plaintiff'"—i.e., the insured—has filed. *Scottsdale Ins. Co.*, 513 F.3d at 558 (quoting *AmSouth Bank*, 386 F.3d at 788). The Sixth Circuit has consistently admonished district courts to be cautious when an insurance

10

company files a declaratory action before the insured files its suit, warning that allowing such actions to go forward "can deter settlement negotiations and encourage races to the courthouse." *See AmSouth Bank*, 386 F.3d at 788 (collecting cases).

Here, Atain filed its declaratory action before the state court allowed Dwyer to assert cross claims. R. 14 at 3. In fact, the day Atain filed this action was the day before the state court hearing to discuss whether Dwyer could assert its claims. *Id.* Not allowing the insured an opportunity to file suit would normally be strong evidence of procedural fencing. *See AmSouth Bank*, 386 F.3d at 789. Atain, however, stated that its motive was to quickly clarify its legal relationship with Dwyer. On its face, this might present a legitimate reason for filing the declaratory action. But even giving Atain the benefit of the doubt does not tip this factor in favor of jurisdiction. At best, this factor is neutral. *See Travelers Indem. Co.*, 495 F.3d at 272 ("Although no improper motive prompted this action, this factor is neutral.").

## CONCLUSION

Together, these factors strongly favor dismissal. The first four weigh in favor of declining to exercise jurisdiction, and under a best-case scenario for Atain, the last one is neutral. Taking into account the preference for respecting state courts' jurisdiction over these matters, the best use of this Court's "broad discretion" is to dismiss Atain's declaratory judgment action. *NGS Am., Inc. v. Jefferson*, 218 F.3d 519, 526 (6th Cir. 2000). If the parties are to determine who bears responsibility for making the Stumbos' foundation whole again, it will be through the foundation of our nation's legal system—the state courts.

Accordingly, it is **ORDERED** that:

(1) Dwyer's motion to dismiss, R. 14, is **GRANTED**.

(2) The motion for a hearing, R. 22, is **DENIED AS MOOT.**

(3) The Clerk shall **STRIKE** this case from the Court's active docket.

This the 11th day of June, 2012.

Signed By:
*Amul R. Thapar* AT
United States District Judge